UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES H. TAYLOR, SR., | ) CASE NO. C07-1795-MAT |
| Plaintiff, | ) |
| v. | ) ORDER RE: SOCIAL SECURITY |
| | ) DISABILITY APPEAL |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff James H. Taylor proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court orders this case REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1958.[1] He completed the eleventh grade of high school and

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -1

reports an inability to read or perform simple math. (AR 61, 364.)[2] Plaintiff previously worked as a short order/prep cook. (AR 22, 58.)

Plaintiff filed DI and SSI benefits applications in February 2004. (AR 12, 346-47.) He alleged disability beginning January 1, 2004 due to diabetes, high blood pressure, arthritis, and neuropathy. (AR 31, 57.) His applications were denied at the initial level and on reconsideration, and he timely requested a hearing.

On May 24, 2007, ALJ Laura Speck Havens held a hearing in this matter, taking testimony from plaintiff and vocational expert Susan Moranda. (AR 360-80.) On July 27, 2007, the ALJ issued a decision finding plaintiff not disabled. (AR 12-24.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on September 18, 2007 (AR 5-8), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be

---

official policy on privacy adopted by the Judicial Conference of the United States.

[2] There are differing reports in the record as to whether or not plaintiff attended special education classes while in school. (AR 61, 208.)

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -2

01 determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's high
02 blood pressure, arthritis, hepatitis, diabetes mellitus with neuropathy, depression and substance
03 abuse disorder severe.

04 Step three asks whether a claimant's impairments meet or equal a listed impairment. The
05 ALJ found that plaintiff's impairments, with consideration of substance use disorders, met the
06 criteria for listings 12.04 (affective disorders) and 12.09 (substance addiction disorders). *See* 20
07 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04 and 12.09. She further concluded that, if plaintiff
08 stopped his substance use, he would not have an impairment or combination of impairments that
09 met or equaled a listed impairment.

10 If a claimant's impairments do not meet or equal a listing, the Commissioner must assess
11 residual functional capacity (RFC) and determine at step four whether the claimant has
12 demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform
13 light work, with a limitation to climb ramps and stairs, balance, stoop, kneel, crouch, or crawl
14 occasionally, and an inability to climb ladders, ropes, or scaffolds. She also found that plaintiff
15 should avoid exposure to extreme heat or cold, vibration, or hazards, such as moving machinery
16 and unprotected heights, but that he retained the capacity to understand, remember, and carry out
17 simple job instructions. The ALJ determined that, if plaintiff stopped his substance use, he would
18 be unable to perform his past relevant work.

19 If a claimant demonstrates an inability to perform past relevant work, the burden shifts to
20 the Commissioner to demonstrate at step five that the claimant retains the capacity to make an
21 adjustment to work that exists in significant levels in the national economy. Considering the
22 Medical-Vocational Guidelines and the testimony of the vocational expert, the ALJ found, in the

absence of substance use, plaintiff would be capable of performing a significant number of jobs in the national economy, such as work as a cashier, small parts assembler, and information clerk.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in rejecting the opinions of three examining physicians and failed to properly consider the opinion of a fourth examining physician. He further argues that the ALJ erred in failing to consider whether his cognitive disorder and anxiety disorder were severe impairments, in failing to consider lay witness testimony, in offering an incomplete hypothetical to the vocational expert, in concluding he could perform light work, and in finding that substance use was a material factor contributing to disability. He requests remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.  For the reasons described below, the Court finds a remand for further administrative proceedings appropriate in this case.

Physicians' Opinions

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

A.  <u>Drs. Frederick Lemere and Cassandra Clark</u>

Dr. Frederick Lemere examined plaintiff on June 30, 2004.  (AR 94-97.)  He found plaintiff markedly limited in several respects (ability to learn new tasks, relate appropriately to co-workers and supervisors, interact appropriately in public, and respond appropriately to and tolerate the pressures and expectations of a normal work setting), and described him as "too depressed, and in pain to be able to concentrate on a job."  (AR 96.)  Dr. Lemere opined: "The prognosis for employability is nil because of chronic pain and major health problems."  (AR 97.)

Dr. Cassandra Clark examined plaintiff on July 28, 2005.  (AR 247-50.)  She also assessed

several marked limitations (ability to understand complex instructions, learn new tasks, exercise judgment and make decisions, relate appropriately to co-workers and supervisors, interact appropriately in public, and respond appropriately to and tolerate pressures and expectations of normal work setting). (AR 249.) She opined that the cognitive limitations (ability to understand complex instructions, learn new tasks, exercise judgment, and make decisions) were most likely not the result of alcohol or drug abuse, and that, although alcohol or drug treatment or a sixty-day period of abstinence would probably decrease the severity of his condition/allow improvement, "it is also possible that there is enough damage to the limbic system from his cocaine use that there will be no improvement[, explaining] the unsuccessful antidepressant trials." (AR 248-49.) She deemed plaintiff seriously disturbed. (AR 250.)

The ALJ described Drs. Lemere and Clark as expressing opinions regarding plaintiff's employability. (AR 22.) She gave their "assessments little weight as they do not reflect findings based on a longitudinal treating relationship and were rendered for the purpose of evaluating [plaintiff's] eligibility for social service benefits." (*Id*.) She went on to note that opinions such as whether or not an individual is "disabled" or unable to work are administrative findings reserved to the Commissioner. However, as argued by plaintiff, the ALJ failed to provide sufficient reasoning for rejecting these physicians' opinions.

The ALJ first discounted the opinions of Drs. Lemere and Clark because they did not have a treating relationship with plaintiff. Yet, while a treating physician's opinion is generally entitled to more weight than that of an examining physician, the ALJ did not here favor the opinion of a treating physician over that of Dr. Lemere or Dr. Clark. An ALJ must consider and give adequate reasons for rejecting the opinions of an examining physician. The mere absence of a treating

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -6

relationship does not constitute a clear and convincing or specific and legitimate reason for rejecting such opinions.

The Court also questions the ALJ's second reason for giving little weight to the opinions of Drs. Lemere and Clark – the purpose of their evaluations. As stated by the Ninth Circuit Court of Appeals in *Lester*: "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." 81 F.3d at 832 (quoting *Ratto v. Secretary*, 839 F. Supp. 1415, 1426 (D. Or. 1993) ("'The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.' While the Secretary 'may introduce evidence of actual improprieties,' no such evidence exists here.")) This calls the ALJ's reasoning into question.

The Commissioner argues that the ALJ appropriately mentioned the purpose of the evaluations to demonstrate that they were prepared under the rules of a different disability program – social service benefits, as opposed to Social Security benefits. While this may be true, the ALJ should have expanded on this reasoning, explaining any relevant differences between the disability programs. The lack of any elaboration detracts from the persuasiveness of the reasoning.

Finally, Drs. Lemere and Clark did not simply render opinions on issues reserved to the Commissioner. While Dr. Lemere did opine as to plaintiff's employability, he also assessed specific limitations. Likewise, Dr. Clark assessed specific limitations and offered an opinion as to the relevance of plaintiff's substance use.[3]

---

[3] The Commissioner also argues that Dr. Clark's diagnoses were, for the most part, qualified in regard to whether they were final diagnoses not induced by substance use. However,

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -7

01       Given the other evidence in the record, it is not clear that the ALJ erred in according the

02 opinions of Drs. Lemere and Clark little weight. However, the reasoning she offered with respect

03 to these physicians was deficient. On remand, the ALJ should reassess the opinions of Drs.

04 Lemere and Clark.

05 B.     <u>Dr. Carla Hellekson</u>

06       Dr. Carla Hellekson examined plaintiff on June 30, 2006. (AR 242-46.) She assessed

07 plaintiff with depression secondary to multiple chronic mental illnesses, anxiety disorder not

08 otherwise specified (NOS), and cognitive disorder NOS/borderline intellectual functioning. (AR

09 243.) She also stated his report that he had been clean of cocaine for six years and found no

10 indication of alcohol or drug abuse. (*Id*.) Dr. Hellekson assessed a marked limitation (ability to

11 learn new tasks) and several severe limitations (ability to exercise judgment and make decisions,

12 to relate appropriately to co-workers and supervisors, to interact appropriately in public contacts,

13 and to respond appropriately to and tolerate the pressures and expectations of a normal work

14 setting). (AR 244.) Her report reflects that plaintiff had "[d]ifficulty with standard cognitive

15 exam" and stated that "his depression and anxiety markedly impairs his ability to work at this

16 time." (*Id*.)

17       Dr. Hellekson also submitted a letter to plaintiff's attorney dated May 22, 2007. (AR 328.)

18 She stated that while ongoing use of alcohol and cocaine would "of course" make his mental

19 disorders worse, "his mental disorders ARE CLEARLY DISTINGUISHABLE from his CD

20 ─────────────────────────

21 this is a post hoc rationalization not offered by the ALJ and not appropriately considered by the Court. In any event, as noted by plaintiff, Dr. Clark distinguished between the possible effect of substance use on plaintiff's depressive disorder, as opposed to his cognitive limitations. (AR 248-

22 49.)

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -8

(Chemical dependency)." (*Id.*; emphasis in original.)  She added:

> If Mr. Taylor were to stop using drugs and alcohol, he would continue to be disabled. This includes his multiple mental problems as well as the relentless complications of diabetes since age 19. Please note that his MMSE is only 22/30, consistent with significant cognitive decline (even though his baseline mental functioning may always have been low). This is likely related to the poor control of his diabetes over the years.

(*Id.*)

The ALJ stated the following with respect to Dr. Hellekson:

> The undersigned gives little weight to a May 18, 2007 from [sic] Carla Hellekson, M.D., to the effect that the claimant is disabled independent of his substance abuse. This letter is conclusory and unsupported by any objective clinical findings. Dr. Hellekson does not appear to be a treating physician and it is unclear whether she ever even examined the claimant. Further, she offers a conclusion on the claimant's disability status which is an issue reserved to the Commissioner.

(AR 21-22; internal citation to record omitted.)  As with Drs. Lemere and Clark, the ALJ failed to sufficiently support her decision to accord the opinions of Dr. Hellekson little weight.

The ALJ again appears to inappropriately rely on the lack of a treating relationship between plaintiff and Dr. Hellekson. Also, questioning whether Dr. Hellekson ever examined plaintiff, the ALJ ignores the presence of the June 2006 examination report from Dr. Hellekson in the record. Contrary to the Commissioner's contention, given the plain language of the ALJ's decision and the failure to even mention the June 2006 report, it is not reasonable to assume that the ALJ meant that Dr. Hellekson did not examine plaintiff in May 2007. Also, while Dr. Hellekson may have opined on an issue reserved to the Commissioner, both his report and letter contain substantial other information requiring the ALJ's consideration.

Nor does the Court find accurate the ALJ's statement that Dr. Hellekson's May 2007 letter

01 is conclusory and unsupported by any objective clinical findings. As noted by plaintiff, Dr.
02 Hellekson pointed to plaintiff's multiple mental problems, diabetes complications, and his
03 performance on a Mini Mental Status Examination (MMSE). (AR 328.) She had also previously
04 examined plaintiff and the June 2006 report reflects the MMSE score, as well as various results
05 of a "standard cognitive exam" and an attachment with a drawing, both of which are reflective of
06 the administration of the MMSE. (AR 242-46.) The Commissioner asserts that Dr. Hellekson
07 did not indicate when the MMSE was administered, provide examination notes, and proffered only
08 a qualified explanation of the significance of plaintiff's score. However, these are post-hoc
09 rationalizations not offered by the ALJ and ignore the evidence as to the MMSE contained in the
10 June 2006 report.[4]

11 In sum, the ALJ failed to provide clear and convincing or specific and legitimate reasons
12 for rejecting the opinions of Dr. Hellekson. Plaintiff also argues that not a single doctor
13 contradicted Dr. Hellekson's opinion that substance abuse is not a material factor contributing to
14 his disability, while the Commissioner contends that her opinions are controverted by the report
15 of Dr. Paul Michels. As reflected below, the Court concludes that the ALJ should reassess Dr.
16 Michels' opinions on remand. Likewise, Dr. Hellekson's opinions should be reassessed.

17 C.     Dr. Paul Michels

18 Dr. Paul Michels examined plaintiff on December 7, 2004. (AR 205-11.) Dr. Michels
19 assessed plaintiff with cocaine dependence, opiate and alcohol abuse, depressive disorder, and

---

[4] The Commissioner also asserts other post-hoc rationalizations for the ALJ's rejection of Dr. Hellekson's opinions not offered by the ALJ and not appropriately considered by the Court. (*See* Dkt. 13 at 18.)

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -10

01 "[q]uite [p]robable" antisocial personality disorder. (AR 210.) He opined as follows:

02 . . . Essentially he meets most, if not all, of the diagnostic criteria for Antisocial
Personality Disorder. I would, however, prefer to have some collateral information
03 as well as longitudinal information before making a definitive opinion about character
disturbance. I suspect that his depressive symptoms are a consequence of the chronic
04 psychosocial chaos that his antisocial tendencies create and perpetuate. His substance
use could potentially create depressive symptoms as well. Despite his claim that he
05 has suffered significant depressive symptoms for many years, he has never sought
treatment and claims that doctors have recommended it but he simply refuses because,
06 "I don't want to be bothered". I suspect that that too is related to his antisocial
tendencies. The prognosis for significant change or improvement in antisocial
07 tendencies would be guarded. He is not involved in any substance abuse treatment
or support at this point, thus the odds are against him as far as maintaining sobriety
08 (if indeed he is sober at this point). At present, the claimant's focus and concentration
seem adequate. Pace and persistence seem good. He seems to be quite resourceful
09 in finding a place to stay each night and in finding food and company. He seems to
have intellectual capacity to understand, remember, and follow simple instructions.
10 He may need special attention for more complicated instructions. His maladaptive
coping mechanisms may create frequent difficulties completing specific tasks in a
11 timely or consistent manner if he feels subjectively offended by others (which is
frequently the case). Interactions with others would likely pose great difficulties for
12 the claimant. Stress would likely be met with further maladaptive coping mechanisms
and worsening of the subjective sense of distress. Given the claimant's homelessness,
13 past history of drug use, and poor math skills, I think money management assistance
should be provided.

14

15 (AR 210-11.)

16 In describing Dr. Michels' report, the ALJ focused on the comments regarding plaintiff's

17 failure to get treatment for his depression, his lack of involvement in substance abuse treatment,

18 and Dr. Michels' "doubts about the veracity of the claimant's claims of sobriety." (AR 15-16.)

19 The ALJ also stated: "Despite these problems, the claimant was noted with adequate focus,

20 concentration, pace and persistence. He is resourceful in finding food, lodging and companionship

21 but has problems interacting with others." (AR 16; internal citation to record omitted.) The ALJ

22 gave "substantial weight to the assessment of [Dr. Michels] to the effect that the claimant suffers

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -11

01 from polysubstance dependence and depressive disorder[,]" finding it "wholly consistent with the

02 weight of the medical evidence of record and rendered by a physician who is an expert in the

03 evaluation of the medical issues in disability claims under the Social Security Act." (AR 18.)

04       Plaintiff argues that the ALJ ignored the crux of Dr. Michels' opinions. He points in

05 particular to Dr. Michels' opinion as to "frequent difficulties completing specific tasks in a timely

06 or consistent manner[,]" the "great difficulties" posed by interactions with others, and the "further

07 maladaptive coping mechanisms and worsening of the subjective sense of distress[]" likely posed

08 by stress. (AR 211.) The Commissioner avers that the ALJ did not mischaracterize and,

09 therefore, reasonably relied on Dr. Michels' opinions.

10       Again, the Court agrees with plaintiff. The ALJ focused on the portions of Dr. Michels'

11 report that suited her conclusions, while failing to distinguish findings that would support greater

12 limitations on plaintiff's capabilities. As observed by plaintiff, Dr. Michels did not relate such

13 limitations to plaintiff's substance use. As discussed further below, on remand, the ALJ should

14 reconsider Dr. Michels' opinions and contact him for clarification of his opinion as to plaintiff's

15 limitations with and without consideration of substance use.

16 <u>Step Two</u>

17       At step two, a claimant must make a threshold showing that his medically determinable

18 impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*,

19 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities"

20 refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b),

21 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the

22 evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.*

Plaintiff argues that the ALJ erred in failing to even consider whether his cognitive disorder and anxiety disorder were severe impairments at step two. Both Dr. Clark and Dr. Hellekson diagnosed plaintiff with these disorders. (AR 243, 248.) They also both indicated the results of psychological testing supporting cognitive deficits. (AR 244, 249.) Plaintiff additionally points to a diagnosis of anxiety disorder by a clinician at a mental health treatment center. (AR 343.)

As noted by the Commissioner, a diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show that his medically determinable impairments are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). However, here, Drs. Clark and Hellekson went beyond merely offering a diagnosis of cognitive disorder; they discussed specific results from psychological testing associated with the diagnosis. Also, for the reasons described above, the ALJ failed to adequately assess the opinions of these physicians as a whole, calling the thoroughness of the ALJ's step two assessment into question.

The Commissioner also argues that, because the ALJ included all of plaintiff's limitations in the RFC assessment (to the extent she found plaintiff's subjective limitations credible), plaintiff fails to demonstrate any disadvantage at step two. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding failure to consider impairment at step two harmless error where ALJ considered any limitations posed by the impairment at step four). Yet, as asserted by plaintiff, the ALJ in *Lewis* had specifically considered the impairment at issue at step four, while there is no indication

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -13

that the ALJ in this case considered either cognitive issues or anxiety in assessing either plaintiff's credibility or his RFC.  (*See* AR 19-22.)

Given the above, on remand, the ALJ should consider whether plaintiff's diagnosed cognitive disorder and anxiety disorder are severe at step two.

Lay Witness Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each witness. *See Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members because, *inter alia*, they were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). *Accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("[L]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.") Moreover, as recently found by the Ninth Circuit:  "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Plaintiff points to the ALJ's failure to consider a letter in the record submitted by Gloria Dyer.  (AR 91-92.)  Dyer describes plaintiff's various problems and suggests that "he has been

trying to forget the bitter pain by using drugs and alcohol." (*Id*.) She also describes plaintiff as "extremely depressed" and noted that he "on occasion" locks himself in his room for several days at a time. (AR 91.)

The Commissioner concedes that the ALJ did not explicitly reject Dyer's testimony, but argues that it provides further support for the ALJ's finding regarding the materiality of plaintiff's alcohol and drug use. He contends that the ALJ's failure to consider this evidence should be deemed harmless as it is "inconsequential" or "nonprejudicial" to the ALJ's ultimate nondisability determination. *Stout*, 454 F.3d at 1055.

The Commissioner's arguments are not well taken. It cannot be said, taking Dyer's statements that plaintiff was extremely depressed and locked himself in his room for days at a time, that no reasonable ALJ, when fully crediting that testimony, could have reached a different disability determination. *Id*. at 1056. Moreover, the Commissioner's argument as to the ALJ's materiality decision is both a post hoc rationalization and inaccurate to the extent that Dyer appeared to be stating that plaintiff's physical and mental health problems were extreme even without consideration of his use of drugs and alcohol. (*See* AR 91 ("Mr. Taylor's personality has changed over the past years all the health issues he has, I'm not [sic] surprised he hasn't committed suicide. Mr. Taylor is very frustrated and bitter about his sexual performance he has arthritis, seizures[,] neuropathy. All these issues I can relate to the fact that he has been trying to forget the bitter pain by using drugs and alcohol."))

In sum, the ALJ erred in failing to discuss and provide germane reasons for rejecting Dyer's letter. On remand, the ALJ should consider and address Dyer's letter.

/ / /

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -15

<u>Hypothetical to Vocational Expert and Light Work Determination</u>

A hypothetical posed to a vocational expert (VE) must include all of the claimant's functional limitations supported by the record. *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)). A VE's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

Plaintiff argues that the ALJ failed to offer a complete hypothetical to the VE. He notes that the ALJ gave substantial weight to the assessment of various State Agency consultants as supporting the conclusion that plaintiff could perform light work. (AR 21.) He asserts that, while Dr. Raymond West found plaintiff capable of sitting for six hours in an eight-hour day, he modified this assessment by stating that plaintiff would be able to do so "providing he is able to move about frequently." (AR 204.) Plaintiff asserts that the ALJ erred in failing to include this caveat in the hypothetical to the VE and that the record is silent as to whether the positions identified by the VE permit an employee to move about frequently. (AR 377-78 (VE identified three jobs in response to a hypothetical stating that plaintiff could sit six hours out of an eight-hour day).)

Plaintiff also challenges the ALJ's determination that he could perform light work. Light work "requires a good deal of walking or standing[.]" 20 C.F.R. §§ 404.1567(b), 416.967(b). *See also* SSR 83-14 (light work "require[s] a person to be standing or walking most of the workday.") Plaintiff argues that the ALJ wrongly found the opinions of Dr. West and Dr. Thomas Fleming to support the determination that he could perform at the light exertion level. (*See* AR 21.) Dr. Fleming found that plaintiff could stand and/or walk for at least two hours in an eight-

01 hour day, while Dr. West found plaintiff could stand and walk four hours in an eight hour day
02 provided he was "able to change position and to rest frequently." (AR 204, 231.)

03 The Commissioner avers that the opinions of Dr. West and Dr. Fleming indicate that
04 plaintiff could perform at least a range of sedentary work and that the VE identified only sedentary
05 jobs at step five. (AR 23, 378.) He suggests that the Court may adjust the ALJ's findings
06 accordingly upon concluding that the ALJ should have limited, and as a practical matter did limit,
07 plaintiff to sedentary work.

08 The ALJ's identification of plaintiff's ability to perform light work may be harmless. His
09 hypothetical to the VE described someone who could stand and walk two hours in an eight hour
10 day. (AR 377.) This corresponds with Dr. Fleming's assessment and falls below the number of
11 hours identified by Dr. West. Also, as noted by the Commissioner, the jobs ultimately identified
12 by the ALJ fell within the category of sedentary work. "Although a sedentary job is defined as one
13 which involves sitting, a certain amount of walking and standing is often necessary in carrying out
14 job duties. Jobs are sedentary if walking and standing are required occasionally and other
15 sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). *See also* SSR 83-14 ("The
16 major difference between sedentary and light work is that most light jobs -- particularly those at
17 the unskilled level of complexity -- require a person to be standing or walking most of the
18 workday.")

19 However, it is not clear whether the sedentary jobs identified would allow for an
20 opportunity to move about, change positions, or rest frequently. On remand, the ALJ should
21 clarify the exact portions of the opinions of Drs. West and Fleming that are accepted and tailor an
22 appropriate hypothetical. Also, as noted by plaintiff, the ALJ's RFC assessment and hypothetical

may well be impacted by a reassessment of the opinions of Drs. Lemere, Clark, Hellekson, and Michels.

## Substance Use

An individual is not considered to be disabled if drug addiction or alcoholism (DAA) would be a contributing factor material to a determination of disability. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Implementing regulations governing the consideration of DAA state: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). The "key factor" in this determination is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. *Id*. at §§ 404.1535(b)(1), 416.935(b)(1). The regulations further state that, in making such a determination, "we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling." *Id*. at §§ 404.1535(b)(2), 416.935(b)(2). DAA is deemed material if the remaining limitations would not be disabling, and not material if those limitations would be disabling. *Id*. As with each of the first four steps of the disability evaluation process, the claimant bears the burden of showing that his or her DAA is not a contributing factor material to his or her disability. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007); *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

Plaintiff argues that the overwhelming weight of the evidence demonstrates that DAA is not a material factor contributing to disability, pointing to the opinions of Dr. Clark (AR 248) and

01 Dr. Hellekson (AR 328) on this issue. He avers that not a single doctor has opined that his

02 substance use is a contributing factor material to disability and that substantial evidence in the

03 record does not support the ALJ's conclusion.

04 The Commissioner contends that Dr. Hellekson's assessment is controverted by Dr.

05 Michels' report. He asserts that Dr. Michels' opinions regarding plaintiff's limitations are based

06 on both plaintiff's substance use and his other mental health issues. (*See* AR 205-11.)

07 The ALJ should seek clarification of Dr. Michels' opinions. As argued by the

08 Commissioner, Dr. Michels found plaintiff capable in several respects with consideration of his

09 substance use. Although he did not directly opine as to whether or not plaintiff would still be

10 disabled with or without consideration of DAA, his report arguably supports plaintiff's ability to

11 work, without consideration of DAA and with certain restrictions (i.e. with simple, non-stressful

12 work involving minimal interactions with others). (*See* AR 210-11.) Dr. Michels' report also

13 provides support for skepticism as to the veracity of plaintiff's reporting as to drug use. (*See* AR

14 210 (stating: "(if indeed he is sober at this point).") For example, while plaintiff told Dr. Michels

15 in December 2004 that he last used cocaine "a year ago[]" (AR 209), he told Dr. Clark in July

16 2005 that he had not used cocaine in five years (AR 247) and Dr. Hellekson in June 2006 that he

17 had not used cocaine for six years.[5]

18 Given Dr. Michels' report and the lack of clarity regarding his conclusions, it is not clear

19 whether it can be said that the only legitimate conclusion in this case is that DAA is not a material

20

---

21 [5] Plaintiff was arguably making a distinction between heavy and occasional use, given that
22 he told Dr. Michels that he had used cocaine "'real bad'" and "regularly" four years prior to their meeting. (AR 209.)

ORDER RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -19

factor contributing to disability. In addition to contacting Dr. Michels, the ALJ should consider seeking the opinion of a medical expert on remand.

## CONCLUSION

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this 20th day of May, 2008.

Mary Alice Theiler
United States Magistrate Judge